IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLAIR LEASING, LLC, ) <br> ) <br>     Defendant. ) <br> _____/ ) <br> ) <br> BLAIR LEASING, LLC, ) <br> ) <br>     Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AUTO-OWNERS INSURANCE COMPANY, ) <br> ) <br>     Counter-Defendant. ) <br> _____/ ) | Case No: 1:19-CV-00066-SNLJ |

**DEFENDANT/COUNTER-PLAINTIFF'S STATEMENT OF
UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF ITS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

COMES NOW Defendant/Counter-Plaintiff Blair Leasing, LLC ("Blair Leasing"), by and through its counsel of record, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 4.01(E), submits this Statement of Uncontroverted Material Facts in Support of its Motion for Partial Summary Judgment against Plaintiff/Counter-Defendant Auto-Owners Insurance Company ("Auto-Owners"):

1.    Auto-Owners Insurance Company ("Auto-Owners") insured Blair Leasing under a policy of commercial property insurance, Policy No. 144605-74848703-16, with effective

dates of April 15, 2016 to April 15, 2017 (the "policy"). Auto-Owners' Statement of Uncontroverted Facts, ¶ 1 [Doc. 46] & Insurance Policy [Doc. 46-1].

2. The Policy provides first party commercial property coverage on certain buildings located at 1507 and 1515 Independence Street, Cape Girardeau, Missouri 63703 (the "insured property"). Insurance Policy [Doc. 46-1] & Compl. For Decl. J., ¶ 7 [Doc. 1].

3. Blair Leasing's premium amount for the policy totaled $23,894.00, and this premium was paid to Auto-Owners. Insurance Policy, p. 1 [Doc. 46-1].

4. The insured property consists of eight buildings. Exhibit 1, Nov. 10, 2017 Report of Carl Martin, P.E., BLAIR LEASING 000050.

5. The policy issued by Auto-Owners to Blair Leasing included the following provision:

> D. ADDITIONAL COVERAGE - COLLAPSE
> The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in D.1. through D.7.
> 1. For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
> 2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
>    a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
>    b. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
>    c. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

> d. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:
> (1) A cause of loss listed in 2.a. or 2.b.;
> (2) One or more of the "specified causes of loss";
> (3) Breakage of building glass;
> (4) Weight of people or personal property; or
> (5) Weight of rain that collects on a roof.

Insurance Policy, p. 82 [Doc. 46-1].

6. Merriam-Webster defines "abrupt" as "characterized by or involving action or change without preparation or warning : sudden and unexpected." Exhibit 2, "Abrupt," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/abrupt (Oct. 30, 2020).

7. On April 26, 2016, July 6, 2016, and August 12, 2016, wind and/or hailstorms hit the insured property. Exhibit 3, Jan. 31, 2020 Report of Howard Altschule, pp. 51-54.

8. During the late-night hours of August 12, 2016 or the early morning hours of August 13, 2016, a portion of the roof of Building A collapsed. Exhibit 4, Examination under Oath of Francis Bader, 27:2-16; Exhibit 5, Examination under Oath of Deborah Burton, 39:14-18.

9. The joists supporting the portion of Building A's roof that collapsed in August of 2016 were rotted, and because they were rotted, Building A's roof collapsed. Exhibit 6, W&C First Report, Auto-Owners-00440.

10. Following Blair Leasing's reporting of the collapse to Auto-Owners, on August 18, 2016 Auto-Owners assigned Wickizer & Clutter, Inc. to investigate Blair Leasing's claim. Exhibit 7, Aug. 18, 2016 Claim Note; Exhibit 6, W&C First Report, Auto-Owners-00440.

11. Auto-Owners also assigned Lloyd Hoagenson, a Field Claim Representative and employee of Auto-Owners, to internally adjust the claim on behalf of Auto-Owners. Exhibit 8, Dep. of Lloyd Hoagenson, 11:4-5, 13:6-13, & 33:21-24.

12. Lloyd Hoagenson was the decision-maker as to whether insurance coverage applied to Blair Leasing's collapse claim. *Id.* at 34:23 – 35:4.

13. When asked whether he is taught to put the interests of insureds over the financial interests of Auto-Owners, Lloyd Hoagenson testified, "We – We always, always, always look for coverage and do our best to pay what we owe on claims. And we always, if there is a doubt, we give the insured the benefit of the doubt." *Id.* at 75:16-23.

14. On November 9, 2016, Lloyd Hoagenson noted in the claim file his possible reasons for denial of Blair Leasing's pending claim. He also noted the following: "I asked the IA[1] to go back and try to get more pictures of rotted decking and trusses so that we can bolster our case for denial." Exhibit 9, Nov. 9, 2016 Claim Note.

15. Prior to the August 2016 partial collapse of Building A's roof, Francis Bader, an individual who provided maintenance services on the property, did not notice any indication that the roof was going to cave in. Exhibit 4, Examination under Oath of Francis Bader, 11:2-7 & 32:18-21.

16. Prior to the August 2016 partial collapse of Building A's roof, Francis Bader noticed that, over the span of "a couple of days," water began leaking into the interior of Building A and started to accumulate on the roof. *Id.* at 26:11 – 27:1 & 28:1-21.

---

[1] "IA" refers to the Independent Adjuster, Wickizer & Clutter.

4

17. When Francis Bader realized a hole existed in the roof of Building A on August 13, 2016, he observed water running out of the doors and running down the steps of the interior portion of Building A. *Id.* at 28:22 – 29:12.

18. At the time of the August 2016 roof collapse, unfinished goods, including paper goods, were stored in the room beneath the area of the collapse. *Id.*; Exhibit 10, Examination under Oath of Ronald Unterreiner, 20:17-24.

19. The terms "decay" and "rot" are synonymous and interchangeable. Exhibit 8, Dep. of Lloyd Hoagenson, 179:7-15.

20. Prior to the August 2016 collapse, the decayed joists supporting the roof were covered with an insulation material, which prevented a visual inspection of the joists unless and until the insulation was removed. Exhibit 11, Dep. of Carl Martin, P.E., 176:14-23.

21. Wickizer & Clutter reported to Auto-Owners that the work areas of the building with the modified bitumen roof "have insulated ceilings on both floors." Exhibit 6, W&C First Report, Auto-Owners-00440.

22. Lloyd Hoagenson has no evidence that, prior to the August 2016 collapse of Building A's roof, Blair Leasing had knowledge of the existence of the decayed joists. Exhibit 8, Dep. of Lloyd Hoagenson, 186:11-25.

23. On November 28, 2016, Wickizer & Clutter reported to Auto-Owners, "The insured advised they were not aware of any rotting until after the collapse." Exhibit 12, W&C Third Report, Auto-Owners-00418.

Respectfully submitted,

/s/ *J. Drew Houghton*
J. DREW HOUGHTON, MBN 18080 OK
LARRY E. BACHE, JR., MBN 91304 FL
**MERLIN LAW GROUP, P.A.**
One Leadership Square
211 N. Robinson, Suite 210
Oklahoma City, OK  73102
Telephone: (405) 218-1105
Facsimile:  (405) 218-1106
Email: dhoughton@merlinlawgroup.com
Email: lbache@merlinlawgroup.com
*Attorneys for Blair Leasing, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th of October 2020, a true and correct copy of the foregoing was served via CM/ECF upon:

**BROWN & JAMES, P.C.**
Bradley R Hansmann, Esq.
800 Market Street
Suite 1100
St. Louis, MO 63101
Email: bhansmann@bjpc.com
*Attorney for Auto-Owners Insurance Company*

/s/ *J. Drew Houghton*
J. Drew Houghton

6